ELIZA DACK, Respondent, v. JAMES DACK, JR., et al., Appellants.

The probate of a codicil to a will was contested, both on the ground of want of due execution, and of undue influence. There was evidence tending to sustain the latter ground. The surrogate refused to admit it to probate upon the first ground without passing upon the latter. The General Term, upon appeal, reversed the decree of the surrogate, and directed him to admit the codicil to probate. *Held*, error; that the case should have been remitted to the surrogate to be heard upon the question of undue influence.

(Argued March 1, 1881; decided March 15, 1881.)

MEM. of decision below (19 Hun, 630).

James Dack, a resident of Monroe county, died in January, 1877, leaving a will and codicil, and leaving his widow and three children, by a former wife, him surviving. The will gave his estate, real and personal, to his wife for life, remainder to her and his daughter. The daughter having subsequently died, the codicil was executed which gave the estate to his wife absolutely. The will and codicil were presented to the surrogate of Monroe county for probate. This was contested by said children on the ground of undue influence, and that they were not duly executed. The surrogate admitted the will to probate, but rejected the codicil on the ground that it was not duly executed. The General Term reversed the surrogate's decree so far as it refused to admit the codicil to probate, and directed the surrogate to admit it.

The rulings of this court, together with the additional facts upon which they are based, are set forth in the following extract from the opinion.

" The execution of the codicil, rejected by the surrogate but sustained by the General Term, was proved somewhat imperfectly, but not more so than may be fairly explained by the forgetfulness of the attesting witnesses. There is no doubt that the testator perfectly and correctly understood the character of his act. By the will itself, made in 1871, he had given to his wife a life estate in his property, with a remainder over to their daughter Elizabeth; thus excluding from his bounty the children by a former wife who are the contestants here. Elizabeth died in 1875, and the purpose indicated by the will had either to be abandoned, or made effectual by some new devise of the remainder. About three weeks before the execution of the codicil he brought the will to Carpenter, who was a neighbor and a justice of the peace, and after talking about an alteration of the will, finally left it in Carpenter's possession. After the delay mentioned, the testator came again, requested the codicil to be drawn, and dictated its terms; directing that the whole of his property should go to his wife absolutely. The codicil was thereupon drawn, and its execution by the testator and the subscribing witnesses immediately followed. It is very certain, therefore, that Dack well understood the testamentary character of his act and retained his original purpose of excluding his older children from any share in his bounty.

It is objected in substance to the proof of the codicil that there was no sufficient publication of it in presence of the subscribing witnesses. According to the evidence of Carpenter, the testator signed the codicil in his presence before the other attesting witnesses were summoned. These were a son of Carpenter and a hired man, named Rossiter. These two were called in to witness the paper by the elder Carpenter from an adjoining room. The call was in the presence of Dack, loud enough to reach the parties intended, and must be assumed to have been made with his knowledge and consent and was equivalent to a request by him. After they arrived, Dack acknowledged his signature. Both the Carpenters agree in that

and Rossiter, at least, does not contradict it.  What further transpired depends mainly upon the testimony of Rossiter. He says that Carpenter "asked Dack if he wanted me to sign the will and Dack said, yes."  He says again that he heard Carpenter say, "if he acknowledged this will," and Dack answered yes.  The elder Carpenter does not contradict but rather corroborates this statement.  When asked the specific question if he inquired of Dack "whether that was his last will or codicil," he replied, "I don't know just how I worded it;" but added afterward, "I don't recollect if I asked him any more than if that was his signature."  Taking this evidence all together, and coupled with the conceded fact of the testamentary purpose which brought the testator to Carpenter's, we think there is sufficient evidence of the publication of the codicil.  Through all the defects of memory and of testimony it is quite possible to see the presence of the former facts necessary to the due execution of the codicil.   (*Coffin* v. *Coffin*, 23 N. Y. 15.)

" But it is further objected  that two of the three witnesses must have signed the attestation clause before the testator signed the codicil, and so the execution was insufficient.  (*Jackson* v. *Jackson*, 39 N. Y. 153; *Sisters of Charity* v. *Kelly*, 67 id. 409.)  The fact is evidently the reverse.  The elder Carpenter swears that the codicil was signed before the arrival of the other two witnesses.  The son says that before he signed, Dack acknowledged his signature.  Rossiter does not contradict this state of facts.  He says that after his arrival, Carpenter handed the pen to Dack, but whether at that time Dack made his mark the witness could not tell.  There are slight inconsistencies and disagreements in the testimony of the subscribing witnesses, but no material or necessary formality is shown to have been omitted.  The attestation clause is full and complete, the signatures are all genuine, the testamentary purpose of the testator and his knowledge of the character of his act are unmistakable, the surrounding circumstances indicate a due execution, and these facts add strength to the evidence of the witnesses, and characterize the details which they are able to narrate.  On the whole, we concur in the opinion of the General Term, that there is sufficient proof of the execution of

the codicil. (*Matter of Kellum*, 52 N. Y. 517; *Trustees of Auburn Seminary*, etc., v. *Calhoun*, 25 id. 425; *Thompson* v. *Stevens*, 62 id. 635.)

" But another difficulty remains. Both the will and the codicil were attacked upon the ground of undue influence. So far as the will is concerned, the surrogate decided the question adversely to the contestants. As it respects the codicil he only determined that it was not shown to have been duly executed. His final decree plainly distinguishes between the will and the codicil, and disposes of them differently and separately. His conclusion as to the latter, that the proof did not show its due execution, rendered unnecessary a determination upon the further issue of undue influence, and it was therefore left undecided. The conclusion of the General Term, that the codicil was duly executed at once, brought the other issue to the surface and rendered it the vital question remaining. It has not been passed on by the surrogate. We cannot tell what his conclusion in that respect may be. The order of the General Term, therefore, directing him to admit the will to probate has the necessary effect of excluding the defense of undue influence from any consideration by the surrogate. The contestants are left in the situation of having interposed a perfectly valid defense, if in fact true, to the probate of the codicil, and seeing such probate granted without any decision upon the material issue tendered. If there were no material facts bearing upon the free and voluntary action of the testator in making the codicil as distinguished from the will, the error would be immaterial, but very many of the facts relied on occurred after the execution of the will, and the possible argument against the codicil is very much stronger than against the will.* * * The contestants are at least entitled to have the issue decided, and not be beaten with a possible defense entirely undetermined. We are of the opinion, therefore, that the case should go back to the surrogate to be heard upon the question of undue influence as affecting the codicil, and that the order of the General Term should be modified accordingly."

*Wm. F. Cogswell* for appellants.

*Q. Van Voorhis* for respondent.

FINCH, J., reads for modification of judgment of General Term, by remitting case to surrogate to be heard upon the question of fraud and undue influence as affecting the codicil, and for affirmance as thus modified.

All concur, except RAPALLO, J., absent.

Ordered accordingly.